IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
97 MAR 31 PM 3: 31
U.S. DISTRICT COURT
N.D. OF ALABAMA

BANK MIDWEST, a National Association, )
)
       Plaintiff, )
)
v. ) CIVIL ACTION NO. CV-96-C-1620-NE
)
MORRIS JAFFE, ELI PIETRACK, and )
IRVING KERN, )
)
       Defendants. )
)

ENTERED
MAR 31 1997

## ORDER ENTERING DEFAULT JUDGMENT AGAINST DEFENDANT ELI PIETRACK

At Birmingham, Alabama, in said District this 31st day of March, 1997; came before the Court the motion of Bank Midwest, a National Association ("Bank Midwest") for entry of default judgment against defendant Eli Pietrack; upon due consideration of the Motion, good and proper notice of the relief requested in the Motion having been given, and for good cause shown, the Court hereby **FINDS, DETERMINES and CONCLUDES** as follows:

    1.    On September 17, 1976, Morris Jaffe ("Jaffe"), Eli Pietrack ("Pietrack") and Irving Kern ("Kern", and collectively with Jaffe and Pietrack, the "Guarantors") executed an Endorsement and Guaranty (the "Guaranty") and delivered same to First Southern Federal Savings & Loan Association of Mobile ("First Southern"). (Corbello Aff., ¶3).

    2.    Under the terms of the Guaranty, the Guarantors jointly, severally and unconditionally guaranteed the payment to First Southern of a loan (the "Loan") owing by Scottsboro Inn Associates,

an Alabama Limited Partnership ("Scottsboro Inn"), relating to an inn in Jackson County, Alabama. (*Id.* at ¶4). As evidence of the Loan, Scottsboro Inn executed a note (the "Note") dated September 17, 1976, payable to First Southern in the amount of $1,000,000.00. (*Id*). The Guarantors were general partners of Scottsboro Inn. Under the Guaranty, each Guarantors' liability is limited to $133,333.33. (*Id*).

3. On August 25, 1989, the Guarantors executed an Assumption Agreement and Modification of Note and Mortgage (the "Assumption Agreement"). (*Id.* at ¶5). The Assumption Agreement also was executed by B. E. Lanum ("Lanum") and Altus Bank, as successor in interest to First Southern ("Altus"). (*Id*). Pursuant to the Assumption Agreement, Scottsboro Inn and Lanum entered into an agreement for the purchase and sale of Scottsboro Inn's assets. (*Id*). Lanum assumed personal liability to Altus under the terms of the Loan, as modified by the Assumption Agreement. As a condition to Lanum assuming said obligations, the Guarantors agreed to their continued personal, separate and several liability to Altus in the reduced amount of $113,333.33 each (the "Guaranteed Amount") under the terms of the Guaranty. (*Id*).

4. Pursuant to the Assumption Agreement, the Guarantors affirmed and acknowledged that the Guaranty is a continuing, absolute and unconditional guarantee that remains in full force and effect until the indebtedness due under the Loan is fully satisfied. (*Id.* at ¶6). Pursuant to the Guaranty and Assumption Agreement, the Guarantors waived all exemption from execution and agreed to pay all costs of collection, including reasonable attorney's fees. (*Id*).

5. On or about May 17, 1991, the Resolution Trust Corporation ("RTC") was appointed as Receiver for Altus by the Office of Thrift Supervision. (*Id.* at ¶7). As a result, the RTC was appointed as Conservator for Altus. (*Id*).

6. On or about June 17, 1992, the RTC transferred, conveyed and assigned unto Community Bank, a National Association ("Community Bank"), all RTC's rights, title and interest in and to the Loan. (*Id.* at ¶8).

7. On or about September 7, 1993, Community Bank was merged into Bank Midwest, which merger was acknowledged and approved by the Office of the Comptroller of the Currency. (*Id.* at ¶9). Upon the effective date of the merger, all assets of Community Bank passed to and vested in Bank Midwest. (*Id*).

8. An event of default has occurred under the terms of the Note, the Assumption Agreement and other loan documents, by the failure of Lanum to make the payments due thereunder. (*Id.* at ¶10). As a result, the principal and interest owing thereunder became immediately due and payable. (*Id*).

9. As of September 25, 1996, the total principal, interest and late charges due and owing by Lanum to Bank Midwest under the Note and Assumption Agreement is $877,704.31, comprised of principal in the amount of $791,678.25, interest of $80,809.55 and late charges of $5,216.51. (*Id.* at ¶11). Interest continued to accrue at the per diem rate of $225.14. (*Id*). Accordingly, said principal, interest and costs owing to Bank Midwest are likewise due and owing by each of the Guarantors under the Guaranty and Assumption Agreement in their respective Guaranteed Amounts. (*Id*).

10. Bank Midwest has made demand upon each of the Guarantors for payment of their respective Guaranteed Amount, however, the Guarantors have failed and refused to pay the obligations thereunder. (*Id.* at ¶12).

11. Based on the services rendered to Bank Midwest in this action, the time expended, expertise required, amount of indebtedness being collected and rates customarily charged, a

reasonable fee to be paid to Burr & Forman for its services rendered in connection with this action is $12,500.00. (Elliott Aff., ¶5)

12. On June 21, 1996, Bank Midwest filed its complaint in this Court against the Guarantors. The complaint was served on Pietrack on January 22, 1997.

13. Pietrack's reply was due to be served on or before February 14, 1997. Pietrack failed to serve a reply or any other responsive pleading to the complaint.

14. This Court entered default against Pietrack on March 21, 1997.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. Bank Midwest's Motion for Entry of Default Judgment is hereby **GRANTED.**

2. Default Judgment is hereby entered in favor of Bank Midwest and against Eli Pietrack in the amount of $113,333.33, plus interest and late charges in the amount of $95,031.66, attorneys' fees of $12,500.00, and the costs of this action.

ORDERED and DECREED this 31st day of March, 1997.

U. W. CLEMON
UNITED STATES DISTRICT JUDGE